CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 23 2020

JULIA C. DULEY, CLERK
BY:
DEPUTY CLERK

For Clerk's Office Use

| Judge | Rec'd |
|-------|-------|
| Cullen | |

IN THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTICT
OF VIRGINIA

For use by inmates filing a complaint under **CIVIL RIGHTS ACT, 42 U.S.C. §1983**

Kalvin Donnell Coward
Plaintiff full name

1091875
Inmate No.

v. -

CIVIL ACTION NO. 7:20-cv-00702

Harold Clarke, Director of Virginia Department of Corrections;
Defendant(s) full name(s)

et al., David Robinson, Chief of Corrections Operations;
(cont. on page 3)

*************************************************************************************************

A. Current facility and address: Augusta Correctional Center, 1821 Estaline Valley Road, Craigsville 24430

B. Where did this action take place? Augusta Correctional Center

C. Have you begun an action in state or federal court dealing with the same facts involved in this complaint?

_____ Yes      ✓ No

If your answer to A is Yes, answer the following:

1.  Court: N/A

2.  Case Number: N/A

D. Have you filed any grievances regarding the facts of this complaint?

✓ Yes      _____ No

1.  If your answer is Yes, indicate the result:

The grievances were deemed Unfounded

N/A

2.  If your answer is No, indicate why:

E.  Statement of Claim(s): State briefly the facts in this complaint. Describe what action(s) each defendant took in violation of your federal rights and include the relevant dates and places. **Do not give any legal arguments or cite any cases or statutes.** If necessary, you may attach additional page(s). Please write legibly.

Claim #1 – Supporting Facts – Briefly tell your story without citing cases or law:

_On October 4, 2018 I filed an informal complaint ("I/C") concerning being denied proper treatment (Harvoni) for my Hepatitis C ("HCV") cronic condition (Exhibit_ (cont. on page 3)

Claim #2 – Supporting Facts – Briefly tell your story without citing cases or law:

_On April 12, 2020 I filed an I/C (Ex. 7) to have tests conducted to determine if I have high blood pressure and/or diabetes due to the lightheadiness I had_ (cont. on page 6)

_(Section E. ▬▬▬▬ cont. on page 8)_

F.  State what relief you seek from the Court. Make no legal arguments and cite no cases or statutes.

_(cont. on page 15)_

G.  If this case goes to trial do you request a trial by jury?    Yes ✓    No _____

H.  If I am released or transferred, I understand it is my responsibility to immediately notify the court <u>in writing</u> of any change of address after I have been released or transferred or my case may be dismissed.

DATED: _Nov. 17, 2020_    SIGNATURE: _Kalvin D. Coward_

VERIFICATION:
I, _Kalvin Donnell Coward_, state that I am the plaintiff in this action and I know the content of the above complaint; that it is true of my own knowledge, except as to those matters that are stated to be based on information and belief, and as to those matters, I believe them to be true. I further state that I believe the factual assertions are sufficient to support a claim of violation of constitutional rights. Further, I verify that I am aware of the provisions set forth in 28 U.S.C. §1915 that prohibit an inmate from filing a civil action or appeal, if the prisoner has, on three or more occasions, while incarcerated brought an action or appeal in federal court that is dismissed on the grounds that it was frivolous, malicious, or failed to state a claim upon which relief may be granted, unless the prisoner is imminent danger of serious physical injury. I understand that if this complaint is dismissed on any of the above grounds, I may be prohibited from filing any future actions without the pre-payment of the filing fees. I declare under penalty of perjury the foregoing to be true and correct.

DATED: _Nov. 17, 2020_    SIGNATURE: _Kalvin D. Coward_

2.

cont. from page 1 (Defendant(s))

Marcus S. Elam, Western Regional Administrator; John Doe/Jane Roe, Western Regional Administrator Assistant; John Doe/Jane Roe, Western Regional Ombudsman; J.A. Woodson, Warden-Augusta Correctional Center; P. White, Warden-Agusta Correctional Center; L. Graham, Operations Manager; T. Lawhorne, Chief of Housing and Programs; John Doe/Jane Roe, Health Service Director; Dr. Smith, Medical Doctor; Dr. Wiedemann, Dentist; T. Conyers, Dental Assitant; D. Dameron, Register Nurse (Head of Nurses); Hanley, Register Nurse (Health Service Assistant); V. Hall, Register Nurse; S. Conner, Institutional Ombudsman; P. Armstrong, Onbudsman Service Assistant; S. Knight, Postal Assistant; V. Damen, Registe Nurse.

cont. from page 2 (E. Statement of Claims); Claim 1)

"Ex."-1), I stated that medication was perscribed for me in the past (May 15, 2013) for said chronic condition. (Ex. 2) However, nurse Dameron ignored the May 15, 2013 date that clearly documents the fact that Peg Interferon and Ribavirim was perscribed for me on Powhatan Correctional Center. Those medicines are perscribed for people with HCV who have active inflamation of the liver. There are other documents in my medical files that speak to the fact that those medication's were perscribed for me. Nurse Dameron, in her response of Oct. 9, 2018 (Ex. 1), referred to an insignificant date of January 4, 2017 that supposedly show that I did not qualify for treatment per DOC policy. It is deliberate indifference that amounts to creul and unusual punishment for nurse Dameron to turn a blind eye to my serious medical need that has been clearly substantiated by the record.

On October 15, 2018 I filed a grievance on this matter (Ex. 3) reiterating what I put forth in the I/C and rejecting the nonsensical response. I asked to be started on the Harvoni immediately. On November 7, 2018 Warde J.A. Woodson upheld nurse Dameron's

page 3.

decision based on nurse Hanley's supposedly supporting statement (Ex.4) that it is possible for my body to HCV and cure itself. In all of my 25 years of having HCV I have never been told that by any of the doctors, nor nurses, that have examined me or talked to me concerning this matter. Nor have I read any literature stating or suggesting that ones body can fight off HCV by itself. I stopped allowing the medical department to draw blood from me on the basis of monitoring my HCV condition because they keep refusing to acknowledge the facts of what my medical records clearly show. Nurse Hanley's claim of my body possibly fighting off the HCV is only a ploy to bring me back in line with accepting their non-treatment of my condition, ~~nurse Hanle~~ ~~Henley~~ which I rightfully refuse to do because I know that I should be receiving treatment oppose to being merely monitored. My latest blood test results of May 4, 2020 clearly reflects the fact that I am HCV positive. (Ex. 5) Thus, nurse Hanley claim of self healing is insignificant in this matter, and she like nurse Dameron, express deliberate indifference that amount to creul and unusual treatment due to her neglect of my serious medical need. Warden Woodson's acceptance and approval of nurses Dameron's and Henley's reasoning in this matter also binds him to their liability causing him to be liable also.

On Nov. 8, 2018 I appealed the Level I response to the Health Service Director (John Doe/Jane Roe) at Level II (Ex.4). The HSO up held the Level I decision that my grievance is Unfounded. (Ex. 6) In my Level II appeal I asked for one good reason why I was approved for treatment in the past (May 15, 2013), when the medication being used then had a very low success rate and was more problems for those taking it, which led to it being discontinued, but not approved for it now (ever since 2016) that there's Harvoni which has over a 90% success rate. The HSO totally ignored my reasonable inquiry, as did everyone I've made it to ever since I first made the inquiry in 2016 here on ACC. The HSO referred to October 2017 when it was decided by the doctor on Deep Meadow Correctional Center that I did not qualify for treatment, and stated that it is reported that I do not meet the criteria for treatment at this time. The HSO

4

aligned him/herself with the rest of the defendants in this claim by accepting their unreasonable responses to the facts of the matter that I have put forth about my HCV condition and by going even further in finding additional reasons to deny me treatment. Ever since I found out about the Harvoni medication replacing the medications that were perscribed for me. and me not being put on the Harvoni I have been thinking and feeling that I am slowly being murdered. It have been times that my fear and anxiety has been so strong that I thought I was about to lose my mind, and from time to time I still feel that way but I've been able to fight through it because I want to live, I want to thrive and be healthy and happy and gain my freedon and oneday and enjoy sometime with my family. The stress of knowing that I should be getting treatment causes me to think that I'm about to breakdown and die everytime I catch a cold or flu because I know HCV weakens the immune system, and with the COVID-19 pandemic now in the equation that just makes it worse. When I saw the doctor in May of this year (2020) I found out that my hemoglobin is low and that is a result of the HepC virus that causes the blood to thin and make wounds hard to heal which I've been experiencing for a few years now. That within itself makes treatment for my HCV necessary, not to mention inflamation of the liver that caused the Peg Interferon to be perscribed for me. I know that I should be getting proper treatment and I employ the court to reject the HSO Unfounded decision of Nov. 19, 2018 and inter an injunction that I be started on the Harvoni treatment immediately. The record clearly show that I am likely to suffer irreparable harm to my liver/kidney, if it hasn't already happened. In addition to the record showing that I should be getting treatment it also show that I was diagnosed with this condition in 1995, approximately 25 years ago. In 2 days I will be 58 years old and I am borderline hypertensive and there are concerns of me being diabetic. In general my health isn't what it was and I can feel it on a decline and I think and feel that my HCV condition is playing a significant role and that I should receive immediate treatment for it and that the court

5

should issue an injunction ordering such based on the evidence I have put forth to support this claim.

cont. from page 2 (E. Statement of Claim(s); Claim 2) been experiencing. The I/C was filed as a result ~~to the resp~~ of the response to a request of April 9, 2020 (Ex.8) telling me that the issue of high blood pressure and diabetes are non-essential and that I should resubmit my request after the COVID Pandemic restrictions are lifted. I was also told that the doctor reviewed my chart and blood pressures documented have been normal. That is the basic response I received from nurse Damen in regards to the I/C in this matter. (Ex.7) However, nurse Damen stated per Dr. Smith I should resubmit the request. Thus, my serious medical needs were being met with deliberate indifference from Dr. Smith, nurse Damen, and nurse Hall whom responded to said request. (Ex. 8)
On April 25, 2020 I filed a grievance on this matter (Ex.9) reiterating the things I stated in the request and I/C on this matter. I stated how it blows my mind that I could be treated in this dismissive and crude manner, particularly with the COVID-19 pandemic crisis being in play, and I expressed the fear and stress that their respones put me under. I again asked to be examined and I asked that the culprits named be held accountable for their unjustified actions.
On May 6, 2020 Warden P. White deemed my grievance Unfounded. (Ex. 10). He relied on the investigation presented ~~in the grievance~~ response to the grievance which was a reiteration of the responses in the request and I/C in this matter, and it was added that the Physician's Assistant has order Lab work and blood pressure checks. That addition show and prove that the respondants initial responses were deliberately indifferent as I have stated. Additionally, when I did see the Physician's Assistant on May 5-6, 2020 she was ready to perscribe high blood pressure meds based on my medical records showing a consistent high rate. She seemed alarmed at my blood pressure status, which contradicted doctor Smith's statements of my blood pressure being normal (Exs. 2 and 8). On May 5, 2020 my

6

blood pressure was deemed border line hypertensive and that more labs were needed. (Ex. 11) And on May 27, 2020, without any more labs being done my blood pressure was deemed acceptable. (Ex. 12) How is that for a case of deliberate indifference to a serious medical need.

On May 7, 2020 I appealed the Level I decision to Level II. (Ex. 10) I reiterated all that has been said on this issue with the exception of the clear deliberate indifference shown in regards to exhibits 11 and 12. The reason it wasn't stated bee is because exhibit 12 issued to me on or after May 27, 2020, even after May 22, 2020 when the Level II respondent (John Doe/Jane Roe) issued its Unfounded decision upholding the Level I decision. (Ex. 13) In my appeal to Level II (Ex. 10) I also stated the fact that this appeal should be re-routed to the appropriate medical authorities, and if not then I would send it to them upon its return to me, which I did on June 17, 2020 (though I mistakenly put 5·17·20), (Ex. 13) However, the HSD did not respond when I sent it to his/her office, (Ex. 14) but he/she did respond to my dental issue that was sent in the same envelop with my blood pressure issue for the same reason of the Regional Administrator not having the authority to address a medical issue. Exhibit 15, the Level II response to the dental issue (the third claim of this motion), show that it was addressed to the HSD with the exact same words and date as the Level II response to the blood pressure issue. (Ex. 13) Both exhibits (13 and 15) were received in the grievance office at the same time, (June 29, 2020) and there is no doubt that exhibit 13 came from the Health Service Office and that the response isn't in keeping with Operating Procedure 866.1 because medical issues are not the jurisdiction of Regional Administrators. Thus, the top brass in this matter allowed is clearly letting it's subordinates run amok by accepting telling lies and accepting lies and unsubstantiated reports without thorough or no investigations. I expressed to the Regional administrator that the grievance/appeal should be re-routed to the appropriate authorities and they still ignored it and baselessly deemed

7

my appeal and issues (Ex. 10) unfounded. Additionally, I have a pending appointment with the doctor concerning my blood pressure. It is the result of me being seen/examined for acid reflux and a rash, and and the nurse finding my blood pressure to be abnormally high. The nurse was alot more concerned with my blood pressure than the other issues. That examination occurred on approximately Oct. 28, 2020. Had more blood work been done as called for (Ex. 11) instead of deeming my blood pressure as acceptable (Ex. 12) later in the month without following up on the plan action this blood pressure issue would probably be nonexistant. For sure, under the circumstances, deliberate indifferene to a serious medical need is written all over all over my case by everyone involved. Twice nurses have been alarmed by my blood pressure high levels, yet and still, Eye am being treated as though all is well, which make me think something else is wrong with me. Hypertension is known as the silent killer but it is basically being taken as a joke in my situation. Warden White, Regional Administrator John Doe/Jane Roe and HSO John Doe/Jane Roe are all liable in this matter because they all have the power to thoroughly investigate this matter and demand that their subordinates administer proper care in this matter but they did not.

Again I ask the court to inter an injunction in this matter ordering the defendants to administer thorough and proper care in this matter that clearly exposes the likelihood of irreparable harm due to inadequate care.

Section E. cont, from page 2, Claim 3:
On March 28, 2020 I submitted an I/C (Ex. 15), in regards to my request of January 8, 2020 (Ex. 16), requesting that the toothpaste Paradontax be prescribed for me to treat my periodontitis/pyorrhea condition that causes bleeding and shrinking gums, and loose teeth and bad breath, and can also lead to oral cancer. Within the I/C I also suggest that I be sent to an outside source to treat my disorder because I couldn't even get my teeth cleaned here. The response of April 2, 2020 by Dental Assistant T. Conyer that Dr. Wiedemann checked with

8

the pharmacy and the product is unavailable, and that referrals to outside sources are not allowed per DOC is deliberate indifference to my serious medical need. T. Conyer didn't even acknowledge the fact of my teeth not being cleaned in over two years. However, she did state in the response to the request of January 8, 2020 that there is no hygienist here at this time, and she suggested that I try the synsodyn toothpaste from the commissary.

On April 9, 2020 I filed a grievance on this matter (Ex. 17). I stated the fact that I'm being denied any treatment for my periodontitis. That I couldn't get my teeth cleaned, can't get the toothpaste designed for my condition, nor sent to and outside to get treatment. I stated that the toothpaste could be ordered like any other medication. I also stated that it makes no sense that DOC don't do or is not allowed referrals to outside sources when they can't treat a serious medical condition. I again asked for the toothpaste to be prescribed or that I be sent to an outside source to have my condition properly treated.

On April 30, 2020 the Level I respondant Warden P. White deemed my grievance Unfounded (Ex. 18) due to the dental department continuing to check with other companies in regards to the toothpaste, and that it was suggested to me to try the Sensodyne toothpaste from the commissary. I appealed to Level II on May 5, 2020. (Ex. 18) basically reiterating my issues, concerns and arguments. Additionally, I pointed out that I've been asking for these things for years, and how crazy it sounds to suggest Sensodyne toothpaste for a condition such as priodontitis, when it does nothing in regards to bleeding and receding guns and loosening teeth. Also, how ridiculous it sounds, and is, to claim that the dentist is continuing to check with other companies in regards to the toothpaste, particularly when the same thing is still being claimed five (5) months later in response to my request of Oct. 23, 2020. (Ex. 19). The Level I respondant did not even speak to the issue of me being sent to an outside source that could provide proper and affective care.

The Level II response of May 22, 2020 upheld the Unfounded decision of Level I. (Ex. 20). The Regional Administrator John Doe/Jane Roe deemed my appeal unfounded even in the face of me pointing out

the fact that this is a medical issue and should be directed to the HSO, which was not done. Thus, the Level II unfounded decision is invalid although the HSO John Doe/Jane Roe gave it a false validity with its June 22, 2020 response (Ex. 14) to my appeal of May 17, 2020 to the HSO. DOC policy does not support the actions taken in this matter. This is clearly deliberate indifference to a serious medical need that can lead to permanent impairment/oral cancer. As a result from of this deliberate indifference, from the bottom to the top by all defendants named in this claim, I am currently perfecting this notion with the left side of my face sore and swollen due to a situation that started approximately Sept. 7, 2020 when I started experiencing pain in my mouth. The pain became severe by Sept 10 and I submitted an emergency grievance. (Ex 21) As a result I was examined by the dentist (Dr. Wiedemann). I didn't know for sure the exact location of the pain but I told him I think it's the canine tooth on my left side. He took x-rays and an fiddled with the tooths on the left side and decided it was the last tooth on that side because it felt loose to him. We kind of disputed about which tooth it was. I was confused because of his uncertainty even after taking the x-rays because I thought the x-rays would identify the problem. I was more confused when he prescribed penicillin along with a pain killer until he could schedule an appointment to have the tooth removed. Penicillin indicates infection so he had to see some infection somewhere on the x-ray. When I was called back for the appointment a week later he was set to pull the tooth that he had indicated was loose. By then I was able to directly locate the pain to the canine tooth and I told Dr. Wiedemann. He seemed disappointed and said well if that's the one you want pulled then let's get it out of there. I asked him why did he think it was the tooth on the end and he again said something about it being loose and reiterated that if the canine tooth is the one I wanted out then he would pull it. It all didn't make any sense to me and in the moment I was contemplating he suggested that I complete the penicillin meds and then send him a request. Exhibit 19 is my request explaining that the intense pain hasn't returned but the nerve connected to the tooth that was to be pulled is damaged and sore, sometimes more sorer than at other times. I stated the fact that anytime I wash or wipe my face I can feel it, I also

10

stated the fact that my pyorrhea/periodontitis is getting worse when there are things that could be done, that's not, that can make it better. The response to my request totally ignored what I stated about the damaged nerve and soreness, and stated that if I wanted the tooth removed to let them know. The response was cold and callous and it ~~also~~ only reiterated their responses to my plea for meaningful care. My following request to dental was on Nov. 3, 2020 (Ex. 22). I stated that it was the nerve, not the tooth, that is damaged; so no I do not want the tooth pulled but why is the nerve damaged and what could be done about it. The response, coldly and callously, instructed me to purchase Sensodyn toothpaste from the commissary and gave some nonsensical instructions on how to use it. On Nov. 9, 2020 I filed an I/C because the sore area that I told ~~them~~ about in ~~the~~ exhibits 19 and 22 started swelling (Ex. 23, receipt of I/C) On the morning of Nov. 10, 2020 I filed an emergency grievance because my mouth was once ~~ag~~ again in alot pain and the swelling had gotten worse. (Ex. 24) I was called to the dentist again, and again I was prescribed pain killers and a different kind of antibiotic and I am awaiting an appointment to have the canine tooth extracted. I couldn't get a clear explanation from Dr. Wiedemann why the nerve couldn't just be treated and save me a perfectly good tooth. If I had been receiving proper and meaningful treatment for periodontitis I wouldn't be going through what I'm going through now with my mouth and the fear of maybe developing oral cancer would not have led me to put this claim forth, and it isn't like this situation just started in 2020. Exhibit 25 is a request of Feb. 26, 2017 where I requested to be checked because of my mouth filling up with blood when I brushed my teeth. I got no treatment as a result of it. Exhibits 26—29 show that I basically ~~with~~ went through the same thing on Deep Meadow Correctional Center (DMCC) before I was transferred back to ACC. They refused to prescribe the toothpaste for me there (Ex. 26) and advised that I need my teeth cleaned. I did get my teeth cleaned once within the 11 months I was housed at DMCC. However, I have not had my teeth cleaned once since I've been back on ACC for the past two years and seven months. To be treated in the manner that I have regarding this issue that can clearly lead to oral cancer, maybe it already has but I just don't know due to the flippant manner ~~of~~ my

11

my situation is being regarded, is clearly deliberate indifference to a serious medical need. Thus, I again ~~as~~ entreat the Court to enter an injunction ordering that I immediately ~~B~~ be started on meaningful treatment for my periodontitis condition which should include a thorough examination from and outside source because it's apparent that DOC has no interest in doing it.

<u>Claim 4:</u> ~~[struck out]~~ On Feb. 2, 2020 I filed an I/C agains the mailroom staff (S. Knight, Postal Asst.) for violation of Operating Procedure ("OP") 803.1 VIII. C. 3 and C. 6. a. (Ex. 30), On Jan. 24, 2020 I received an email with 4 photos attached; however, I wasn't aware of it being 4 photos until I spoke with the sender approximately 9 days later. Only 3 of the photos were posted with the email. Per 803.1 VIII. C. 3 secure messages (emails) and attachments should be reviewed and processed within 2 ~~days~~ working days. Thus, to remain silent about the 4th photo is to violate the processing rule which automatically triggers the violation of OP 803.1 VIII. C. 6. a. which mandates that messages and attachments that don't comply with content requirements will be returned to the sender and the offender will be notified on their media device of the return and the reason for it. ~~[struck]~~ None of that took place so I would not have been able to challenge the violation if I would not have spoken with the sender some days later. OP 803.1 VIII. C. 6. b. gives the offender the right to appeal the return but that right is usurped with the aforementioned violations. That usurpation violates my right to petition the government for redress of grievances. Those OP violations also supports the tampering with, ~~and tampering~~ withholding of and stealing of my mail, which are lawfully punishable offenses ~~a~~ that deprived me of my personal property.
On Feb. 5, 2020 Postal Asst. S. Knight responed to my I/C with the simple statement "your photos was processed according to Policy 803.1". That statement is clearly untrue per the aforementioned 803.1 subsections. In responding to the I/C S. Knight violated OP 803.1 VIII. C. 6. d. by not providing me with specific identifying information that should have included the letter ID, date of rejection, and custamer ID. (Ex. 30)
On Feb. 7, 2020 I filed a grievance in this matter (Ex. 31) I basically

12

reiterated what I put forth in the I/c and I asked that the with-held photo be posted and an investigation of the mailroom staff be conducted and all culprits in this matter be held fully accountable for their unjust actions.

On March 6, 2020 T. Lawhorne, Cheif of Housing and Programs deemed my grievance unfounded (Ex.32) agreeing that the photos were processed according to policy 803.1 and stating that the photo in question is semi-nude, which is ~~basically~~ defined as ~~shall include but is not limited to persons in diapers, underware, lingerie, or swimwear.~~ "Partially clothed; covered by under clothes or minimal clothing so as to appear nude." (OP 803.1 III.) That definition is majorly flawed when one reads OP 803.1 III. definition of nudity.(The showing - human or cartoon - of the male or female genitals, pubic area, female breasts with less than a fully opaque covering of the areola, or male or female buttocks with less than a full opaque covering of the anus.) Thus, if atleast one of the sexual or private areas named in the nudity definition is not exposed in a photograph then it cannot be defind as semi-nude. Exposure of the arms, legs, back, shoulders, torso, etc. is not semi-nude, and the framers of OP 803.1 shouldn't be allowed to arbitrarily ~~define~~ distort the definition in order to allow restriction of semi-nude photos under OP 803.1 when it comes to prisoners personal photos but allow those same type of semi-nude photos under OP 803.2 (Incoming Publications). The semi-nude definition in OP 803.1 doesn't exist in OP 803.2. With the allowance of our media devices (JP5 Players) there can be no concerns of prisoners personal photos on the device being stolen or comprimised in any way, so there can be no justification to allowing semi-nude under one policy but not the other.

T. Lawhorne response (Ex.32) speaks to the matter of photos sent through secure messaging being deemed personal and not allowed if they are deemed semi-nude which shall include but is not limited to persons in diapers, underwear, lingerie, or swim wear. (OP 803.1 VIII. A.3.) How-dose it make sense that I can purchase a photo of a woman in underwear, lingerie and/or swim wear but I can't have that kind of photo of my wife or girlfriend, or even a female family member when it comes to swim wear. We see babies

13

in diapers everyday in magazines, books, and on tv (also people in swimwere, etc.) but we can have the same of our children and babies. That is ridiculous and it need to be brought to and end.

T. Lawhorne also stated in her response that it is not the mailrooms responsibility to notify you (me) of any denied photos in accordance with the OP this is JPay's responsibility. However, there is absolutely nothing within OP 803.1 that supports that claim which is designed to justify S. Knights unjust action in this matter. With the exception of the JPay responsibility issue I put all other issues to ~~the~~ Level II ~~regardless~~ in my appeal of the Level I respondant unfounded decision.(Ex.32) My appeal was done on March 3, 2020. I also stated in my appeal to Level II that OP 803.1 should be revised to exclude all unfair practices. Thus, this is a challenge to the substance and interpretation of OP 803.1 which per 866.1 VI. C.3. b. (Offender Grievance Procedure) should have been appealable to the the Chief of Corrections Operations. ~~However~~

However, when I received the unfounded decision of March 24, 2020 from the Regional Administrator (John Doe/Jane Roe) (Ex.33), I was advised that this is my last level of appeal and that I had exhausted all ~~d~~ administrative remedies.

I understand that this claim, on the surface, is about only one photo that I asked to be posted because the semi-nude definition is flawed, however, this situation has occurred many, many times since 2017 but I think it is useless to flood this motion with unnecessary paper-work, and I think that as long as the defendants concede to the clearly layed out facts that OP 803.1 should be revised to reflect fairness in regards to OP 803.2, as has been expressed, the other instances over the years do not have to be brought into play. Because of their support and uphold of S. Knight's depriving me of my personal property without due process of law and usupation of my right to petition the government for redress of grievances, T. Law-horne, Chief of Housing and Programs and John Doe/Jane Roe, Regional Administrator made thenselves liable ~~liable~~ in this suit and they should be held accountable along with S. Knight. Harold Clarke and David Robinson are liable due to being the framers of OP 803.1.

14

(cont. from page 2) section F. Relief Sought

In regards to Claim 1 I ask the court to issue an order that the defendants immediately start treating me the Harvoni medication or its equivalent that it now uses on prisoners that have/qualify for the treatment, as the record clearly show that I do, and with there being nothing in the record that directly dispute my assertion in this matter. In addition to an injunction for immediate treatment I also ask the court for $100,000 for presumed damages that Hep C can cause and for punitive damages for the emotional/mental distress that I have suffered over the years, particularly since 2016, due to the defendants negligent refusal to treat my Hep C condition.

In regards to Claim 2 I ask the court for an injunction ordering the defendants to immediately apply the proper procedures that will determine my blood pressure status and to properly treat it according to that status. And, because the record indisputably show that the defendants have been deliberately indifferent to my serious medical need due to their negligence in their diagnosis and treatment of my high blood pressure situation, that is reffered to as the silent killer, I ask for presumed and punitive damages to be considered in conjuction with the money asked for in claim 1.

In regards to Claim 3 I ask the court for an injuction ordering the defendants to immediately provide meaningful dental care for my periodontitis condition, to include the toothpaste that is designed for such, and regular professional cleaning even from an outside source. In this claim the evidence also show that the defendants have been deliberately indifferent to my serious medical need that could led to oral cancer. Thus, in conjunction with the other claims I ask the court to award $100,000 for presumed and punitive damages.

In regard to claim 4 I ask the court to order the defendants to stop the unfair practices expounded within the claim and to revise OP 803.1 to reflect fairness in regards to OP 803.2. And because my personal property

15

was withheld from me without due process of law and because my right to petition the government for redress of grievances has been abridged in this matter I ask that the court for punitive damages in conjunction with the $100,000 asked for in the other claims.

November 17, 2020                                    Kelvin D. Coward

16

Nov. 17, 2020

Kalvin D. Coward 1091825
Augusta Corr. Center
1821 Estaline Valley Road
Craigsville, VA 24430

Dear Honorable Clerk,

This letter is to inform you that ~~my~~ the Prisoner Trust Account Report will be furth coming to the court as soon as I receive it back from trust account officer.

Thank you,
Kalvin Coward



Clerk, United States District Court
210 Franklin Road, SW, Suite 540
Roanoke, VA 24011-2208



U.S. POSTAGE PITNEY BOWES

ZIP 24430 $ 002.80°
02 4W
0000375357 NOV 18 2020

THE DEPARTMENT OF CORRECTIONS HAS
NEITHER CENSORED NOR INSPECTED THIS
ITEM AND ASSUMES NO RESPONSIBILITY
FOR ITS CONTENT