IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| KALVIN DONNELL COWARD, | ) | CASE NO. 7:20cv00702 |
| also known as KELVIN D. COWARD, | ) | |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| HAROLD CLARKE, *et al.*, | ) | By: Hon. Michael F. Urbanski |
| Defendants. | ) | Chief United States District Judge |
| | ) | |

The plaintiff, Kalvin Donnell Coward, also known as Kelvin D. Coward, a Virginia inmate proceeding *pro se*, filed this civil rights action under 42 U.S.C. § 1983. He alleged that prison officials have been deliberately indifferent to his serious medical needs and interfered with his incoming mail, in violation of his constitutional rights. In this Memorandum Opinion, the court addresses the Motion for Summary Judgment filed by defendants Kyle Smith, M.D. ("Dr. Smith"); April Hanley, RN ("Nurse Hanley"); Victoria Hall, RN ("Nurse Hall"); Virginia Damen, RN ("Nurse Damen"); and Derinda Damer;on RN ("Nurse Dameron") (jointly "Mediko Defendants," referring to their employer company). Upon review of the record, the court concludes that the Mediko Defendants are entitled to summary judgment.

**I.**

Coward's § 1983 claims arose while he was incarcerated at Augusta Correctional Center ("Augusta"), a prison facility operated by the Virginia Department of Corrections ("VDOC"). Coward's § 1983 Complaint raises four separate claims or groups of claims:

(1)     An Eighth Amendment claim of deliberate indifference to his serious medical needs regarding treatment for his Hepatitis C. Coward brings this claim against Nurse Dameron and Nurse Hanley and prison administrators.

(2)     An Eighth Amendment claim of deliberate indifference to his serious medical needs regarding concerns about high blood pressure and diabetes testing. Coward brings this claim against Nurse Damen, Dr. Smith, and Nurse Hall, and prison administrators

(3)     An Eighth Amendment claim of deliberate indifference to his serious medical needs for a particular type of toothpaste and treatment for periodontal disease. Coward brings this claim against dental personnel and prison administrators.

(4)     A due process claim regarding an alleged lack of adequate notice after Coward did not receive a photograph someone sent to him via the JPay secured messaging system. Coward brings this claim against prison administrators and staff at Augusta.

As stated, before the court in this instance is a motion (ECF No. 28) filed by Dr. Smith, Nurse Dameron, Nurse Hanley, Nurse Hall, and Nurse Damen, concerning Coward's Claims (1) and (2).[1] Coward has responded to this motion (ECF No. 48, 67), making it ripe for disposition.

---

[1]  The court notes that the other individuals named as defendants to Coward's four claims have not joined in the present motion. The prison administrators and staff are represented by one attorney, and the dental staff defendants are represented by a different attorney. The court will separately address dispositive motions filed by these two groups of defendants.

In Claims (1) and (2), Coward asserts that the Mediko Defendants denied him evaluation and treatment for Hepatitis C, high blood pressure, and diabetes. As relief, he asks the court to order these defendants to "immediately start treating [him with] [Hepatitis C] medication," and to order "the proper procedures that will determine [his] blood pressure status." Compl. 15, ECF No. 1. Coward also seeks monetary damages. In support of their summary judgment motion, the Mediko Defendants have provided affidavits and medical records whose accuracy Coward does not dispute. Mem. Supp. Mot. Summ. J. Ex. A (medical records); Ex. B ("Smith Aff."); Ex. C ("Hall Aff."); Ex. D ("Damen Aff."); Ex. E ("Dameron Aff."), Ex. F ("Hanley Aff."), ECF Nos. 29-1 through 29-4. From those materials and Coward's Complaint and exhibits, the court summarizes Coward's course of treatment at Augusta related to Hepatitis C, high blood pressure, and diabetes during the period at issue in this lawsuit.

Dr. Smith is a licensed doctor who has worked as an independent contractor providing medical care and treatment to Augusta inmates since July 2018. Dr. Smith bases his affidavit, in part, on his review of VDOC medical records for Coward.  Nurse Hanley served as the Health Services Administrator ("HSA") at Augusta from April 9, 2018, until April 30, 2019. In that post, Nurse Hanley coordinated medical services provided by the medical staff, reviewed and responded to inmate grievances, and handled other patient care issues. Dameron Aff. ¶ 2. Nurse Dameron later served as HSA at Augusta, and Nurses Damen and Hall worked there as nurses. Nurses are not authorized to prescribe or initiate treatment. *Id.* at ¶ 8.

Coward arrived at Augusta on April 27, 2018. Transfer documentation from his prior prison facility indicated that at the time of transfer, he had "no chronic care diagnoses and was

not taking any medications." Smith Aff. ¶ 5. During the first several months at Augusta, Coward raised no medical complaints regarding Hepatitis, high blood pressure, or diabetes. On September 21, 2018, Coward submitted a sick call request for Hepatitis C treatment. He stated that he had previously been prescribed medication for this disease. A nurse referred him to a sick call visit with Dr. Smith on this issue.

Dr. Smith first met with Coward on October 3, 2018. Dr. Smith explained to Coward that he could not be treated for Hepatitis C without consenting to and undergoing the bloodwork necessary to verify the presence, and monitor the progression, of the disease in his body. Coward refused the bloodwork. Nevertheless, Dr. Smith put in orders for it, hoping that Coward would change his mind once the bloodwork was scheduled.

On October 4, 2018, Coward submitted a sick call request, again asking for Hepatitis C treatment. Nurse Dameron replied on October 9, 2018:

> There are guidelines that are followed for referral for treatment, which includes lab work for the doc policy. In the past (1-4-17) you did not qualify for treatment. You have been scheduled for lab work. Please show for your scheduled appointment.

Compl. Ex. 1, ECF No. 1-1. On October 18, 24, and 25, 2018, and on January 2, 2019, when the medical staff had scheduled bloodwork appointments scheduled for Coward, he refused to appear to have his blood drawn and tested.

Coward states that he "stopped allowing the medical department to draw blood" because "they keep [sic] refusing to acknowledge the facts of what [his] medical records clearly show." Compl. 4, ECF No. 1. According to Dr. Smith's review of Coward's medical records, however, "Coward's Hepatitis C viral load last tested positive in 2016. A subset of patients spontaneously clear the virus from their bodies." Smith Aff. ¶ 10. For that reason, "without

- 4 -

updated bloodwork" to evaluate the progression of the disease, Dr. Smith "could not confirm

the diagnosis or establish a plan of care" for Coward for Hepatitis C. *Id*.

 On October 15, 2018, Coward filed a Regular Grievance, complaining that he had

been treated with medication in the past for Hepatitis C and wanted to begin receiving

treatment for this disease. Compl. Ex. 3, ECF No. 1-1. The Level I response referred to Nurse

Dameron's information from the Informal Complaint and also stated:

> According to RN Hanley, HAS, it is possible for your body to fight Hep C and
> cure itself, so without lab work it is impossible to know if you require treatment
> at all. Based on the results of your lab work we will follow the DOC guidelines
> regarding treatment for Hep C. [Y]ou will need to complete your lab work so
> that we can move forward with your case. You are being followed in accordance
> with DOC guidelines and protocol.

Compl. Ex. 4, ECF No. 1-1. After Nurse Hanley investigated Coward's medical records to

provide information in response to his Regular Grievance, she had no further involvement

with Coward and left the facility in April 2019. Hanley Aff. ¶ 10.

 Between October 3, 2018, and September 24, 2019, records indicate that Coward did

not input any requests for sick call or express any medical complaints. In September 2019,

Coward complained of a minor infection in his finger, and Dr. Smith examined and treated

him for that issue.

 On November 13, 2019, a nurse evaluated Coward at sick call for complaints of

dizziness, nausea, vomiting, and a headache. Thereafter, Dr. Smith reviewed the sick call

request and asked for an appointment with Coward. At the time of that appointment on

November 20, 2019, Coward did not show up to see the doctor.

Between November 2019 and April 2020, Coward made no complaints related to high blood pressure or diabetes.[2] Dr. Smith had no involvement with Coward during this time. The doctor states that he "is not privy to inmate requests and grievances and [has] never received any correspondence from Coward." Smith Aff. ¶ 13.

On March 12, 2020, the Governor of Virginia declared a state of emergency due to the COVID-19 pandemic. To help contain the spread of the COVID-19 virus among inmates and staff at Augusta, administrators limited inmate movement, and medical staff met only with inmates who had urgent and emergent medical needs. *See* Hall Aff. ¶ 8.

On April 9, 2020, Coward submitted a sick call request, complaining of light headaches and concern that his blood pressure might be high. Compl. Ex. 8, ECF No. 1-1. Nurse Hall answered this request the same day. She indicated that she and Dr. Smith had reviewed Coward's prior blood pressure readings and agreed that these readings did not qualify Coward for urgent treatment. *See* Hall Aff. ¶ 9. Hall explained that non-essential movement was suspended because of the pandemic, but she invited Coward to resubmit his request when restrictions were lifted. After responding to this sick call request, on several occasions, Hall reviewed Coward's test results. On April 30, 2020, Coward consented to bloodwork he had previously refused. Hall did not have any personal involvement with Coward after April 2020. *Id.*

On April 12, 2020, Coward filed an Informal Complaint, raising concerns about lack of response to his worries over possible high blood pressure or diabetes, based on his recent

---

[2]  The dental department at Augusta is separate from the medical services. Therefore, the Mediko Defendants have no knowledge of any dental complaints Coward may have made while at Augusta.

lightheadedness. Compl. Ex. 7, ECF No. 1-1. Nurse Damen received the filing the next day and "investigated it by reviewing Coward's chart and assessing prior blood pressure trends." Damen Aff. ¶ 10. Nurse Damen also spoke with Dr. Smith about Coward's medical conditions and the Informal Complaint. They agreed that Coward's prior readings "did not qualify him for urgent treatment" due to pandemic restrictions. Nurse Damen responded to Coward's concerns in writing on April 20, 2020, "Per Dr. Smith resubmit sick call when restrictions are lifted. You have been seen previously for this issue with normal blood pressures. You then no showed for your follow up appointment." Compl. Ex. 7, ECF No. 1-1. After this response, Nurse Damen had no further personal involvement with Coward.

On April 30, 2020, Coward consented to undergo bloodwork. Dr. Smith reviewed the results of this testing in early May and noticed mild anemia, "mildly elevated transaminases and a positive viral load," findings that the doctor found to be "consistent with Hepatitis C." Smith Aff. ¶ 15. For further investigation of anemia, Dr. Smith ordered repeat blood tests and a stool sample. He found the results of this repeat bloodwork to be "stable and reassuring." *Id.* at ¶ 17. After this review of test results, Dr. Smith had no involvement with Coward until November 2, 2020.

A physician's assistant, Carrie Clemens, examined Coward on May 6, 2020, for a chronic care visit. She noted the Hepatitis C diagnosis and also mentioned borderline hypertension (high blood pressure). Coward's blood pressure during the visit measured at 137/89. Ms. Clemens documented that Coward rejected her proposal of antihypertensive medication and preferred to try lifestyle changes. Ms. Clemens's notes indicate that Coward reported his Hepatitis C had first been diagnosed in 1995 and that he was currently

"asymptomatic." Smith Aff. ¶ 16. Ms. Clemens ordered blood pressure checks and a follow up visit in 90 days.

Coward had a follow-up chronic care visit on September 1, 2020. His blood pressure was normal, but the provider ordered a liver scan to assess the extent of the scarring from Hepatitis C. Smith Aff. ¶ 18. The VDOC owns a fibroscan machine. Thus, its availability affects the timing of ordered scans. *See* Dameron Aff. ¶ 20.

On October 8, 2020, Nurse Dameron reviewed the results of Coward's COVID-19 test. It was negative. Thereafter, Nurse Dameron's name does not appear in Coward's chart, and she had no further involvement with him. *See* Dameron Aff. ¶ 19.

On October 27, 2020, a nurse saw Coward at sick call after he complained of a rash behind his ear.[3] The nurse did not find any rash when she examined Coward, but did record his blood pressure as being elevated at 147/100, although it decreased to 122/74 by the end of the exam. The nurse referred Coward to see Dr. Smith.

On November 2, 2020, Dr. Smith reviewed the nurse's sick call referral of Coward. Given ongoing movement restrictions within the facility because of COVID-19, Dr. Smith was only meeting with inmates who had urgent and emergent medical needs. Because the nurse did not find any rash and Coward's blood pressure normalized by the end of the visit, Dr. Smith cancelled the sick call request as non-essential due to the pandemic. Coward complained again later in the month of itchiness. Again, the nurse who examined him found no rash, and Dr. Smith cancelled the sick call request as "non-essential due to the pandemic." Smith Aff. ¶ 20. The doctor states that he cancelled the two appointments with Coward in

---

[3] Coward's Complaint does not include any claim concerning a rash or itchy skin.

November 2020 after Coward had been fully examined and assessed by a nurse and because in the doctor's "clinical judgment, the risk of [Coward] being transported throughout the facility and coming into contact with multiple people during the pandemic was greater than any minor issue he had at the time." *Id.* at ¶ 24.

Coward tested positive for COVID-19 on December 3, 2020. He was quarantined within the facility.

Dr. Smith's review of records reflects that a nurse practitioner examined Coward on March 24, 2021 and referred him for further bloodwork and for the previously ordered liver scan, which had been delayed because of the pandemic. After Dr. Smith reviewed records from this exam, he "made the referral for Coward to undergo Hepatitis C treatment." Smith Aff. ¶ 23. The parties agree that on Dr. Smith's orders, Coward is now receiving treatment for chronic Hepatitis C. He received his first dose of prescription medication for the condition on June 1, 2021.

The defendants' evidence is that Coward has never been diagnosed as diabetic or as borderline diabetic. Smith Aff. ¶ 24. While he has occasionally registered elevated blood pressure readings during a medical exam, these readings "have normalized with sitting down and altered lifestyle choices." *Id.*

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude

the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). But if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

### III.

### A.

Coward alleges that the Mediko Defendants, in individual ways, delayed or denied him evaluation or treatment for Hepatitis C, high blood pressure, and diabetes. But Coward has

not established that actions by any of these defendants met the legal definition of deliberate indifference to known serious medical needs as required to state a § 1983 claim. Therefore, the court will grant defendants' Motion for Summary Judgment.

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). To establish a cognizable Eighth Amendment claim for denial of medical care, an inmate plaintiff must put forth facts sufficient to demonstrate that a state official was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). A prison official is "deliberately indifferent" only if he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (U.S. 1994). A deliberate indifference claim must satisfy a high bar, and that bar is not met by showing that "an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *See Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Jackson, 775 F.3d at 178. Mere negligence does not constitute deliberate indifference; rather, a prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists and must draw the inference. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *see also Farmer*, 511 U.S. at 837. The prison official's conduct must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Militier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. 825.

- 11 -

A claim concerning a mere disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Harris v. Murray*, 761 F. Supp. 409, 414 (E.D. Va. 1990). In fact, "many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F.3d at 178. An "error of judgment" on the part of prison medical staff or "inadvertent failure to provide adequate medical care," while perhaps sufficient to support an action for malpractice, does not constitute a constitutional deprivation redressable under § 1983. *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989).

Intentional delay of, or interference with, medical treatment can also amount to deliberate indifference. *See Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). The Fourth Circuit, however, has held that there is "no Eighth Amendment violation unless 'the delay results in some substantial harm to the patient,' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" *Formica*, 739 F. App'x at 755 (citing *Webb v. Hamidullah*, 281 F. App'x 159, 166–67 (4th Cir. 2008)); *see also Shame v. S.C. Dep't of Corr.*, 621 F. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."). Substantial harm may also be "a lifelong handicap or permanent loss." *Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995). "[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Id.* at 758.

B.

In Coward's response to the Mediko Defendants' motion, ECF No. 48, Coward complains that the defendants should have known from reviewing his past VDOC medical records that he had Hepatitis C, needed regular chronic care visits with a doctor, and needed treatment. His exhibits include numerous documents from 2013, 2016, and 2017, indicating that he was "Hep C [positive]." *See, e.g.,* Ex. 7, ECF No. 48-1.  He submits records from years earlier showing that doctors had prescribed medications to treat his Hepatitis C, but Coward refused to take them, so they were discontinued. In 2016 and 2017, when Coward demanded treatment with newly available, more effective medications, the medical staff performed more blood work. *See, e.g.,* Ex. 34 (lab test report from June 30, 2016, showing "CBC, CMP essentially normal"). Based on these test results, in January 2017, doctors determined that Coward did not meet VDOC criteria for Hepatitis C treatment at that time, but would be "should be monitored according to the [VDOC] interim Guideline for Chronic Hepatitis C Infection Management," to include clinical evaluation and retesting every six months to a year. Ex. 50.

When Coward asked for Hepatitis C treatment at Augusta in 2018 and the nurses and Dr. Smith said he would have to undergo blood work first, Coward refused because he feared test results would become an excuse to deny him treatment. He scoffs at the defendants' statements that in some Hepatitis C virus patients, later test results prove them to be clear of the virus altogether. Coward also contends that when his initial blood work at Augusta was consistent with Hepatitis C, Dr. Smith should have begun treatment immediately, instead of ordering additional testing. Coward argues that his approval for treatment beginning in June

2021 proves he should have received that treatment sooner without having to bring a lawsuit to make it happen.

### 1. Dr. Smith

Coward claims Dr. Smith was deliberately indifferent to his Hepatitis C, hypertension, and diabetes. Assuming that these conditions are serious medical needs, Coward fails to show how Dr. Smith demonstrated deliberate indifference to these conditions.

First, Coward does not dispute the defendants' evidence that he has never been diabetic or even borderline diabetic during his incarceration at Augusta. Occasionally, his blood pressure registered as elevated. But it normalized with sitting down and making healthy lifestyle choices. On multiple occasions, Dr. Smith has assessed Coward for both of these conditions (or the possibility that he has developed them). Dr. Smith acknowledges that because of restricted movement during the COVID-19 pandemic, he delayed two physical exams Coward had requested. Dr. Smith did so only after a nurse had fully examined and assessed Coward's condition and after Dr. Smith determined in his clinical judgment that the risk of exposure to COVID-19 posed a greater risk to Coward than the comparatively minor complaint at issue.

Second, the undisputed medical records indicate that Dr. Smith has not shown deliberate indifference toward Coward's Hepatitis C condition. Since Dr. Smith first saw Coward in October 2018, he has consistently addressed Coward's concerns. Even when Coward refused blood draws to assess his viral load, a necessary prerequisite to begin treatment for Hepatitis C treatment, Dr. Smith scheduled those blood draws anyway. When Coward consented to blood draws a year and a half later in April 2020 (one month into the pandemic), Dr. Smith reviewed results and ordered follow up labs to complement Coward's visits with

the chronic care clinic and monitor his condition. The liver scan ordered in September 2020 was delayed due to pandemic restrictions and the availability of the VDOC-owned fibroscan machine. And now, Coward is receiving treatment for his disease as warranted by the testing he received while under Dr. Smith's care at Augusta.

The court simply finds no evidence in the record showing that Dr. Smith knew Coward had a serious medical need for treatment different than the prescribed course of treatment, as required to prove deliberate indifference. *Quinones*, 145 F.3d at 167. Coward believes Dr. Smith negligently failed to investigate his medical records and treat him based on prior testing results years earlier. But allegations of negligence or even medical malpractice are not sufficient to prove deliberate indifference. *Estelle*, 429 U.S. at 97("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").[4] Coward also disagrees with Dr. Smith's insistence on current blood test results in determining treatment needs for Hepatitis C.  Such disagreements between doctor and patient simply do not demonstrate deliberate indifference under the Eighth Amendment. Wright, 766 F.2d at 849; Russell, 528 F.2d at 319.

Indeed, at the most, Dr. Smith's insistence on blood work merely delayed the onset of treatment for his chronic Hepatitis C condition. Yet, Coward does not dispute the evidence that he refused for months to undergo such testing or that he was not displaying any symptoms related to Hepatitis C during that period. A delay of treatment supports an Eighth Amendment

---

[4]  The court notes that Coward's Complaint does not assert a medical malpractice or negligence claim. And in any event, Coward cannot support such claims based merely on the evidence he has offered—his own untrained assertions about what past test results show or what he believes Dr. Smith should have done or not done. Moreover, to the extent that Coward is now attempting to raise negligence or medical malpractice claims, they are actionable, if at all, only under state law. The court declines to exercise supplemental jurisdiction over any such claim, pursuant to 28 U.S.C. § 1367(c).

claim only if it results in some substantial harm to the patient. *Formica*, 739 F. App'x at 755. Coward has shown no such harm from the delayed start of his treatment for Hepatitis C.[5]

Thus, the court finds no material disputed fact on which Coward could prove that Dr. Smith acted with deliberate indifference to his serious medical needs. Therefore, the court will grant the Motion for Summary Judgment as to Coward's claims against Dr. Smith.

### 2.  Nurse Hanley

The court also finds no evidence in the record that Nurse Hanley acted with deliberate indifference to Coward's medical needs.  This defendant's involvement with Coward's case was limited to one occasion in November 2018, when she provided input to jail administrators in response to the inmate's Regular Grievance. In her role as HAS, she reviewed his records to learn of his medical status and determined that he was refusing bloodwork, despite Dr. Smith's explanation of the need for it as a prerequisite to Hepatitis C treatment. Nurse Hanley relayed this information to administrators. That information is entirely consistent with Dr. Smith's evidence about the need for bloodwork to verify the presence and progression of the disease before implementing any new treatment.

Coward clearly disagreed with the need for blood work in determining treatment. He has not shown, however, that Nurse Hanley ignored any requests, refused to assess him, or denied him access to medical care. Certainly, he has not shown that Nurse Hanley's actions were "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*, 896 F.2d at 851. Finding no material disputed fact

---

[5]  Moreover, because the parties agree that Coward began receiving treatment for Hepatitis C in June 2021, his demands in this lawsuit for injunctive relief ordering that he receive such treatment are moot.

on which a jury could rule in Coward's favor on his claim against this defendant, the court will grant the Motion for Summary Judgment as to Nurse Hanley.

### 3. Nurse Hall

Coward alleges that Nurse Hall was deliberately indifferent during her one involvement in Coward's care, when she responded to his April 2020 complaint of lightheadedness and wanted assessment for high blood pressure.[6] The court finds no evidence to support deliberate indifference. Nurse Hall responded to the request the same day she received it. Moreover, it is undisputed that in response to this request, Nurse Hall and Dr. Smith reviewed his medical records to confirm that his recent blood pressure readings had been normal.[7] Based on that evidence, they decided that the risk of Coward's catching COVID-19 while coming to a physical appointment was greater than the risks his symptoms and concerns indicated. Thus, Nurse Hall responded to Coward that he did not need emergent treatment, as required for movement between areas in the facility at that time.

Coward disagreed with Hall's information about his blood pressure readings and her medical judgment that he had no emergent reason for assessment that day. Such disagreements between an inmate and the medical staff as to a medical judgment about appropriate treatment do not state a deliberate indifference claim, because questions of medical judgment are not subject to judicial review. *Russell*, 528 F.2d at 319. Coward offers no evidence suggesting that Nurse Hall's actions were "so grossly incompetent, inadequate, or excessive as to shock the

---

[6] In this request in April 2020, Coward expressed concern over possible diabetes. As discussed, it is undisputed that Coward has never been diagnosed as diabetic or as borderline diabetic.

[7] Dr. Smith states that he did not see Coward's request forms, written complaint forms, or grievances until after this lawsuit was filed. He does not deny, however, that he reviewed Coward's blood pressure readings with nurses in April 2020.

conscience or to be intolerable to fundamental fairness." *Miltier*, 896 F.2d at 851. Finding no material disputed fact on which a jury could rule in Coward's favor on his claim against this defendant, the court will grant the Motion for Summary Judgment as to Nurse Hall.

### 4. Nurse Damen

Coward's claim against Nurse Damen is based on her response to his Informal Complaint dated April 12, 2020. The records indicate, however, that Damen investigated his complaint about light headedness and blood pressure concerns by reviewing his chart and assessing prior blood pressure trends. She also spoke to Dr. Smith about Coward's medical conditions. Based on that evidence, they decided that the risk of Coward's catching COVID-19 while coming to a physical appointment was greater than the risks his lightheadedness and medical history indicated. Thus, Nurse Damen responded to Coward that he did not need emergent treatment, as required for movement between areas in the facility at that time. This was Nurse Damen's only personal interaction with Coward.

Coward disagreed with Nurse Damen's information about his blood pressure readings and her medical judgment that he had no emergent reason for assessment that day. Such disagreements between an inmate and the medical staff as to a medical judgment about appropriate treatment do not state a deliberate indifference claim. *Russell*, 528 F.2d at 319. Coward offers no evidence suggesting that Nurse Damen's actions were "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*, 896 F.2d at 851. Finding no material disputed fact on which a jury could rule in Coward's favor on his claim against this defendant, the court will grant the Motion for Summary Judgment as to Nurse Damen.

- 18 -

### 5. Nurse Dameron

Nurse Dameron had only two limited encounters with Coward. In October 2018, in a written response to a sick call request asking for Hepatitis C treatment, Nurse Dameron told Coward he had not qualified for such treatment as recently as January 2017. She encouraged Coward to appear for his scheduled bloodwork as ordered by Dr. Smith so the doctor could determine whether Hepatitis C treatment was warranted by Coward's current condition. Coward ignored this advice and continued to refuse the bloodwork for a year and a half, thus delaying his own treatment. In October 2020, Nurse Dameron reviewed Coward's COVID-19 test result and found it to be negative.

Coward disagreed with Nurse Dameron's advice that bloodwork was necessary to obtain Hepatitis C treatment. Such disagreements between an inmate and the medical staff as to a medical judgment about appropriate treatment do not state a deliberate indifference claim. *Russell*, 528 F.2d at 319. Coward fails to establish (and his medical records do not reflect) that Nurse Dameron ignored any requests, refused to assess him, or denied him access to medical care. Indeed, he provides no evidence that her actions deprived him assessment or treatment. Certainly, Coward offers no evidence suggesting that Nurse Dameron's actions were "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*, 896 F.2d at 851. Finding no material disputed fact on which a jury could rule in Coward's favor on his claim against this defendant, the court will grant the Motion for Summary Judgment as to Nurse Dameron.

## IV.

For the stated reasons, the court will grant the Mediko Defendants' Motion for Summary Judgment, ECF No. 28.  An appropriate Order will issue herewith.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties

**ENTERED** this 31st day of March, 2022.

Michael F. Urbanski
Chief U.S. District Judge
2022.03.31 11:02:30
-04'00'

_____
Michael F. Urbanski
Chief United States District Judge