IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| KALVIN DONNELL COWARD, | ) | CASE NO. 7:20cv00702 |
| also known as KELVIN D. COWARD, | ) | |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| HAROLD CLARKE, *et al.*, | ) | By: Hon. Michael F. Urbanski |
| Defendants. | ) | Chief United States District Judge |
| | ) | |

The plaintiff, Kalvin Donnell Coward, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging that prison officials have been deliberately indifferent to his serious medical and dental needs and censored his incoming mail, in violation of his constitutional rights. In this Memorandum Opinion, the court addresses the Motions for Summary Judgment filed by defendants Werner Wiedemann, DDS, and dental assistant Tammy Coyner[1] (jointly the "Dental Defendants") regarding Claim (3) of Coward's Complaint,[2] alleging denial of proper treatment for dental issues. Upon review of the record, the court concludes that Dental Defendants' summary judgment motions must be granted.

## I.

Coward's § 1983 claims arose while he was incarcerated at Augusta Correctional Center ("Augusta"), a prison facility operated by the Virginia Department of Corrections ("VDOC"). As stated, before the court in this instance are the Dental Defendants' summary judgment

---

[1] In the Complaint and other submissions, this defendant is sometimes referred to T. Conyer or T. Conyers.

[2] The court notes that the Dental Defendants are only named in Claim (3) of Coward's four claims. The other individuals named as defendants to Coward's § 1983 claims have not joined in the present motions and have filed their own responses that the court does not address here.

motions, ECF Nos. 37 and 64. Coward has responded to these motions, ECF Nos. 61 and 74. The Dental Defendants then filed replies, ECF Nos. 68 and 70, and Coward has responded to those filings, ECF Nos. 71 and 74. Thus, the court finds that the motions are ripe for disposition.

Liberally construed, Coward's Claim (3) alleges that Dr. Wiedemann and Ms. Coyner were deliberately indifferent to serious medical needs when they failed to refer Coward to an outside provider for dental cleaning and failed to provide Paradontax brand toothpaste for Coward, both of which Coward requested as treatment for his periodontitis. Coward also alleges that Dr. Wiedemann failed to adequately treat nerve pain related to Coward's upper left canine (Tooth 11) and failed to provide any treatment for his periodontitis other than extracting affected teeth. As relief, Coward demands an injunction directing the defendants to "immediately provide meaningful dental care for [his] periodontitis condition, to include the toothpaste that is designed for such, and regular professional cleaning." Compl. 15, ECF No. 1. He also seeks monetary damages.

In support of his Motion for Summary Judgment and his Reply, Dr. Wiedemann offers two declarations and explains dental treatment records whose accuracy Coward does not dispute. *See gen.* Wiedemann Decl., ECF No. 38-2; and Wiedemann Suppl. Decl., ECF No. 68-1. Coyner refers to these records and declarations as support for her summary judgment motion.[3]

---

[3] Dr. Wiedemann also submits an affidavit from the grievance coordinator at Augusta, J. Chitum, ECF No. 38-1, presenting evidence of Coward's failure to exhaust administrative remedies regarding the dentist's treatment of Tooth 11.

Dr. Weidemann is a dentist who provides dental services to inmates at Augusta, and Coyner was employed as a dental assistant there. Coward most recently transferred to Augusta on April 27, 2018. Before that transfer, he had developed periodontal disease, also known as periodontitis.

Dr. Wiedemann states, "Periodontitis is a chronic inflammation of the gums that is typically caused by poor oral hygiene. Damage caused by periodontitis is irreversible, but its effects can be treated." Wiedemann Decl. ¶ 4. VDOC Operating Procedure ("OP") 720.6, governing dental care for inmates, includes recommendations adopted by the Virginia Board of Dentistry to assist a general dentist in applying periodontal diagnosis and treatment. Wiedemann Suppl. Decl. Ex. A.

> Treatment plans for adult periodontitis should include, if necessary, offender education, customized oral hygiene instruction, and debridement of tooth surfaces. Adult periodontitis *may* require additional treatment modalities including root planing, scaling, gingivectomies, and extractions. None of these treatments are recommended as a matter of course for all diagnosed periodontitis patients. The appropriateness of a particular treatment for a patient's current needs rests in the discretion of the individual dentist.

Wiedemann Supp. Decl. ¶ 10. A patient can manage his chronic periodontitis condition through good oral hygiene habits. *Id.* at ¶ 11. Complications may arise and present a serious need for intervention by a medical professional, such as when a tooth becomes abscessed and requires extraction and medications. *Id.* But a "diagnosis of periodontitis does not in itself create a serious medical need for" a dentist's attention, and "[n]ot all periodontitis patients require clinical treatment to prevent loss of life or permanent impairment." *Id.*

Dental cleanings, including debridement, planing, and scaling, are performed by trained dental hygienists. *See gen. id.* at ¶ 12. All such cleanings are prophylactic (or preventative)

- 3 -

treatments, even in periodontitis patients, and a periodontitis patient does not face a substantial risk of permanent impairment or death from lack of dental cleanings.

VDOC OP 720.6 categorizes priority levels for types of inmate dental needs to further a mission of ensuring adequate, necessary, and cost-effective dental care to all VDOC inmates. *Id.* at ¶¶ 5-9. Inmates who require no dental care or only need stain removal fall into Class 1 (low priority). Inmates who require routine dental treatment are categorized into Class 2. Routine dental treatment is elective, and the inmate must request such treatment using the appropriate form. Most common dental procedures fall into Class 2, including fillings, dentures, wisdom tooth or other tooth extractions, root canals, and periodontal treatment. A VDOC prison dental department will provide routine dental care to inmates as the resources of staff, time, and materials allow, and commensurate with the inmate practicing good oral hygiene habits on his own. The dental assistant is responsible for processing dental treatment requests, triaging inmates based on their care needs, and scheduling them for routine care in the chronological order in which they submit their requests.

Class 3 dental conditions have priority and require prompt attention due to extreme pain or need for immediate intervention to control or prevent the exacerbation of the condition, such as a severe, unrelenting toothache or swelling from an abscessed tooth. Class 3 inmates will be seen on the next available dental clinic day. Finally, inmates who need emergency dental treatment fall into Class 4. Such emergencies include traumatic injury or uncontrolled bleeding. A Class 4 inmate will be seen immediately and be referred to outside care, if necessary. When a Class 3 or Class 4 condition has been resolved, the inmate will be reclassified into an appropriate treatment category.

VDOC permits referrals of inmates to outside dental providers only in limited circumstances: (1) when an inmate's condition places him in Class 4, where his emergent dental need will have an immediate effect on his health if not treated immediately; (2) when complicated oral surgery is beyond the capability of the facility dentist; or (3) when the inmate's medical condition makes an in-house oral surgery procedure a risk to his health. *Id.* at ¶ 13. It is undisputed that Coward never presented for a dental exam exhibiting Class 4 symptoms.

Dr. Wiedemann denies Coward's accusation that he provided no treatment for the inmate's periodontitis and focused only on his teeth that needed extraction. The dentist states, "Periodontitis treatment does not necessarily require targeted treatment of the gums beyond basic oral hygiene such as brushing and flossing. [It] can involve treatment (including extraction) of the teeth encroached upon by periodontitis. Extraction of affected teeth removes a source of infection from the mouth and can improve the infection of the surrounding gums." *Id.* at ¶ 15. Dr. Wiedemann's records detail dental evaluations, recommendations, medications, and treatments he provided to Coward, related to his periodontitis and dental needs at Augusta from April 2018 to June of 2021, when Coward transferred to another facility.

On May 30, 2018, Coward saw Dr. Wiedemann for impressions to construct a partial denture, a Class 2 dental procedure. *See gen. id.* at ¶ 17. The dentist noted that Tooth 17, a wisdom tooth, was quite mobile and would need extraction to create clearance for Coward's partial denture. Coward refused the extraction. Dr. Wiedemann tried to design the partial denture to circumvent Tooth 17.

On June 6, 2018, Coward failed to show up for a scheduled dental visit. When Coward filed a subsequent request for care, the dental assistant rescheduled him for August 13, 2018. That day, Dr. Wiedemann evaluated Coward and told him about "the compromised situation surrounding Tooth 17," but Coward refused extraction, claiming the tooth was "asymptomatic." *Id.* at ¶ 19.

Between August 20, 2018, and January 31, 2019, Dr. Wiedemann saw Coward three more times regarding his partial denture. *See gen. id.* at ¶ 20. He delivered the partial denture to Coward on April 19, 2019, which put Coward's dental priority in Class 1, unless he requested care.

Coward saw Dr. Wiedemann for an adjustment of his partial denture on May 22, 2019. Part of the device had broken off. The dentist ordered its repair and talked to Coward again about the occlusal issues with Tooth 17; he noted this tooth "was irritated and had advanced periodontal disease impinging on the tuberosity, the bony area behind Coward's wisdom tooth." *Id.* at ¶ 21. This condition upgraded Coward to priority Class 2 on the dental treatment scale. Ultimately, Coward agreed that extraction was the best long-term solution. Dr Wiedemann extracted Tooth 17 without complication on May 28, 2019, and prescribed pain medication.

In mid-July 2019, Coward submitted a request form asking to have his teeth cleaned. A dental hygienist placed Coward on the cleaning list. Shortly thereafter, the hygienist left employment at Augusta, and administrators had difficulty finding a replacement hygienist. *Id.* at 4 n. 1.

At a July 24, 2019, post-operative check of Tooth 17, Dr. Wiedemann noted that the surgical site had healed well. He also delivered Coward's repaired partial denture to him. Coward's priority status moved back to Class 1, as he required no further dental treatment. Staff advised him to file a request if he needed dental care.

On January 8, 2020, Coward filed an Inmate Request for dental care, stating: "I have paradontitis and my teeth hasn't been cleaned in two years. . . . My gums have been bleeding and I've been experiencing pain here and there and I need my teeth cleaned, or as I have been suggesting for the past couple of years now, prescribe the Paradontax toothpaste that is specifically for my condition." Compl. Ex. 16, ECF No. 1-1. T. Coyner responded on March 24, 2020, advising Coward to try Sensodyne toothpaste, which was available from the commissary. Coyner also told Coward to brush his teeth three times per day with a soft toothbrush and to floss once a day. She told Coward that the facility did not have a dental hygienist at that time, but she put him on the list of dental cleaning requests. Wiedemann Decl. ¶ 7.

Dr. Wiedemann states that he reviewed Coward's treatment request forms or Informal Complaint forms about dental care only after this lawsuit was filed. *See id.* ¶¶ 7, 8, 10, 15. Rather, the dental assistant read and responded to request forms and Informal Complaints from inmates.

On March 28, 2020, Coward filed an Informal Complaint, stating:

On January 8, 2020 I requested that the toothpaste Paradontax be prescribed to me to treat any bleeding and sometimes swollen gums that are symptoms of paradontitis. I also suggested that I be sent to an outside source to treat my disorder, and I stated the fact that it's been over two years since my teeth have been cleaned. The suggested 3 brushes and 1 flossing a day is constantly been [sic] done. Sensodyne toothpaste is not design[ed] for bleeding and receding

gums. The suggestion of me being seen and treated by an outside source was totally ignored, thus, my situation is deliberately being ignored. . . . I am not the reason there is no hygienist here at AC. I still suppose [sic] to receive proper care, and I want that proper care.

Compl. Ex. 15, ECF No. 1-1. Coyner responded to this filing: "Dr. Wiedemann checked with the pharmacy and this product is unavailable. Referrals to outside sources are not allowed per DOC." *Id.*

Dr. Wiedemann states that he never recommended Paradontax toothpaste to Coward as a treatment for his dental condition. *See gen.* Wiedemann Decl. ¶¶ 24, 28. The dentist indicates that he tried to obtain Parodontax from outside sources to appease Coward and because it did not appear harmful to his dental condition. However, Dr. Wiedemann states that this product was not medically necessary for Coward's condition and that using Paradontax would not cure or reverse his periodontitis.[4]

Dr. Wiedemann states that Coward never informed him, personally, that he wanted a dental cleaning or that he had not had a cleaning since his transfer to Augusta in April 2018. *See gen. id.* ¶¶ 26, 27. In any event, it is the responsibility of dental hygienists to conduct all dental cleanings for VDOC inmates. Dr. Wiedemann does not have the authority to hire dental hygienists or to advertise job openings for Augusta. He also states that while dental cleanings are an important part of preventative care like regular tooth brushing, not receiving a dental cleaning did not put Coward at a significant risk of developing permanent impairment or oral cancer, an issue Coward has raised. Even if Coward had told Dr. Wiedemann, personally,

---

[4] The company that produces Paradontax toothpaste acknowledges that this product treats some effects of periodontitis, but cannot cure or reverse the condition. Wiedemann Decl. ¶ 28.

about the two-year delay for dental cleanings, and the dentist had referred Coward to an outside provider for a cleaning, the referral would have been blocked by VDOC regulations. They do not permit transporting inmates to outside providers for dental cleanings, and prison dentists do not have authority to override VDOC transportation policies.

On September 10, 2020, Coward experienced pain on the left side of his mouth so severe that he filed an Emergency Grievance. *See gen.* Compl. 10-11, ECF No. 1; Compl. Ex. 21, ECF No. 1-1; *id.* at ¶¶ 12, 30; Wiedemann Suppl. Decl. ¶ 24. Dr. Wiedemann examined Coward later that day. Coward's symptoms placed him in treatment level Class 3. Coward did not know exactly which tooth was causing his pain. The dentist observed no swelling, and X-rays revealed no decay or infection to the teeth in the area that was sore. The dentist also noted Coward's a history of periodontal problems. Dr. Wiedemann's physical exam revealed that a neighboring tooth (Tooth 13) was mobile and showed signs of periodontal disease. The dentist scheduled Coward for reassessment and possible extraction of Tooth 13 and provided him with pain medication. He also prescribed antibiotics in case of infection within the teeth that Coward identified as potentially problematic, even though no infection showed in the X-rays.

By the time Coward returned for the extraction appointment on September 17, 2020, he could definitively identify the canine tooth (Tooth 11) as the source of his pain. *See gen.* Wiedemann Decl. ¶¶ 13, 30. Dr. Wiedemann offered to pull that tooth.[5] Coward hesitated, saying the pain had subsided. Dr. Wiedemann noted there were no caries or anything obviously

---

[5] Coward questions Dr. Wiedemann's recommendation to extract Tooth 13 although he had seen no decay in that tooth on the X-ray results. The dentist states that imaging cannot always detect decay, and appropriateness of an extraction depends on many factors, including the patient's reported symptoms and the visual and physical examination of the teeth and gums. Wiedemann Suppl. Decl. n. 2.

wrong with Tooth 11. He suggested that Coward complete the medications and then send a request if he still wanted a tooth extracted.

By October 23, 2020, Coward's intense tooth pain had subsided, and he had completed the medications. He submitted a dental request, Compl. Ex. 19, ECF No. 1-1, complaining that although the severe pain was gone, the nerve to the same canine tooth was sore. He also complained that his periodontitis was getting worse and asked again about special toothpaste or getting his teeth cleaned. Coyner responded, "Let us know if you want that tooth removed. You are on the cleaning list. You signed up [July 15, 2019]. There is no hygienist here at this time to clean teeth. Richmond is trying to find a replacement. Dr. Wiedemann is checking on the toothpaste from several sources for you." *Id.*

On November 2, 2020, Coward wrote another dental request, Compl. Ex. 22. He stated that he did not want the tooth pulled and asked what could be done about the nerve soreness. He also complained again about how long he had been asking for special toothpaste and dental cleanings as treatment for his periodontitis. Coyner responded, suggesting that Coward could purchase Sensodyne toothpaste, which was available from the commissary, to address the soreness. She told him to be sure his mouth was clean before bed and to then rub Sensodyne on the sore spots without rinsing.

On November 10, 2020, Coward filed an Emergency Grievance, Compl. Ex. 24, complaining of swelling and soreness. Dr. Wiedemann responded the same day, indicating that Coward had been evaluated and that an extraction would be scheduled. At this point, Coward's treatment level was Class 3 priority. Dr. Wiedemann Suppl. Decl. ¶ 25. During the exam that day, Dr. Wiedemann saw no caries in Tooth 11, but did see swelling of the buccal

plate, the bone surrounding the tooth on the side of the jaw closes to the cheek. X-rays were taken, and from the results, Dr. Wiedemann discovered a lesion and an abscess of Tooth 11 and noted that the tooth required extraction. *See gen.* Wiedemann Decl. ¶¶16, 30. The dentist prescribed antibiotic and pain medications and scheduled the extraction for a week later. When Coward filed his § 1983 Complaint in late November 2020, he was awaiting the dental appointment for the extraction.

The dental department scheduled an extraction appointment for Coward on November 17, 2020. *See gen. id.* at ¶¶ 18-23, 30. That appointment and several others were postponed because Coward felt ill or because of COVID-19 pandemic protocols. Dr. Wiedemann ensured that Coward had active prescriptions for pain medications and antibiotics while his appointment was postponed.

Coward presented to the dental department on January 5, 2021, for extraction of Tooth 11. *See gen. id.* at ¶¶ 23, 30; Wiedemann Suppl. Decl. ¶ 25. Coward signed a consent to treatment form, voiced no objections to the extraction, and tolerated the procedure well. Coward's treatment level was downgraded to Level 2. Dr. Wiedemann provided him post-op instructions on oral hygiene practices and prescriptions for pain medication and antibiotics to treat any infection.

Dr. Wiedemann states that Coward did not ask him about alternative treatment for Tooth 11, such as a root canal procedure. *See gen.* Wiedemann Decl. ¶ 31. Even if Coward had made that request, the dentist indicates that the only viable option to reduce Coward's pain and treat the abscess was extraction. Due to the extent of Coward's periodontitis, he was not a candidate for root canal therapy, and such a procedure would likely not have been a lasting

- 11 -

fix for Tooth 11. That tooth was surrounded by diseased gum tissue, and the support for the tooth was deteriorating. Furthermore, root canals even in healthy patients weaken the remaining tooth and increase the risk for breakage and cracking of the affected tooth.

## II.

### A.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court's summary judgment inquiry is whether the evidence, taken in the light most favorable to the nonmoving party, "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014).[6]

A *pro se* litigant's verified complaint or other verified submissions must be considered as affidavits and may defeat a summary judgment motion when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). But the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). "[S]elf-serving statements in affidavits without factual support in

---

[6] The court has omitted internal quotation marks, alterations, and/or citations here and throughout this opinion, unless otherwise noted.

the record carry no weight on summary judgment." *Butts v. Aurora Health Care, Inc.*, 387 F.3d

921, 925 (7th Cir.2004). Instead, the nonmoving party must respond by affidavits or otherwise

and present specific facts from which a jury could reasonably find for either side. *See Anderson*,

477 U.S. at 256-57.

## B.

Section 1983 permits an aggrieved party to file a civil action against a person for actions

taken under color of state law that violated his constitutional rights. *Cooper v. Sheehan*, 735 F.3d

153, 158 (4th Cir. 2013). To establish a cognizable Eighth Amendment claim for denial of

medical care, an inmate plaintiff "must allege acts or omissions sufficiently harmful to evidence

deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

"Dental care has been recognized as an important medical need for inmates." *Royal v. Bassett*,

No. CIV.A. 7:08-CV-00222, 2008 WL 5169443, at *6 (W.D. Va. Dec. 9, 2008) (citing *Ramos v.

Lamm*, 639 F.2d 559, 576 (10th Cir. 1980)). However, a state:

> is not constitutionally obligated, much as it may be desired by inmates, to
> construct a perfect plan for dental care that exceeds what the average reasonable
> person would expect or avail herself of in life outside the prison walls. . . .
> Common experience indicates that the great majority of . . . prisoners would
> not in freedom or on parole enjoy the excellence in dental care which . . .
> [inmates] seek on their behalf.

*Id.* (quoting *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). Rather, the court must be

"governed by the principle" that a state must provide its inmates with at least "the minimum

level of [dental] care required by the Constitution." *Id.* "[T]he essential test is one of medical

necessity and not one simply of desirability." *Id.*

Thus, for Coward to prevail in his claims against the Dental Defendants, he must allege

two distinct elements. First, he must allege a sufficiently serious medical need. *Estelle*, 429 U.S.

- 13 -

at 106. "A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain." *Royal*, 2008 WL 5169443, at *6. *See Farmer v. Brennan*, 511 U.S. 825, 832-35 (1994); *Sosebee v. Murphy*, 797 F.2d 179, 182-83 (4th Cir. 1986); *Loe v. Armistead*, 582 F.2d 1291, 1296-97 (4th Cir. 1978). A simple diagnosis of "periodontitis is not a serious medical need" for a particular type of treatment. *Moore v. Parham*, No. 1:16CV1519 (CMH/IDD), 2017 WL 4118458, at *5 (E.D. Va. Mar. 23, 2017) (holding no serious medical need despite plaintiff's fears that periodontal disease sometimes contributes to heart problems or sepsis which are capable of causing death), *aff'd* by 696 F. App'x 661 (4th Cir. Aug. 29, 2017): *Burke v. Illinois Dep't of Corr.*, No. 05 1059, 2006 WL 2850475, at *4 (C.D. Ill. Oct. 2, 2006) ("In general, periodontal disease does not constitute a serious medical need."). On the other hand, periodontal inflammation around one or more teeth that reaches an acute stage may be considered "a serious medical need," although it is rarely a life-threatening condition. *Watson v. Clarke*, No. 1:14CV1315 (GBL/MSN), 2016 WL 1240872, at *5–6 (E.D. Va. Mar. 24, 2016), *aff'd*, 670 F. App'x 800 (4th Cir. 2016).

Second, Coward must allege facts showing each defendant exhibited deliberate indifference to a serious medical need. *Estelle*, 429 U.S. at 106.

> Under this second prong, an assertion of mere negligence or even malpractice is not sufficient to state an Eighth Amendment violation; instead, plaintiff must allege deliberate indifference "by either actual intent or reckless disregard." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (recognized in *Sharpe v. S. Carolina Dep't of Corr.*, 621 F. App'x 732, 733 (4th Cir. 2015) *as overruled on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994)); *see also Daniels v. Williams*, 474 U.S. 327, 328 (1986). To do so, the prisoner must demonstrate that a defendant's actions were "[s]o grossly incompetent, inadequate, or excessive as

- 14 -

> to shock the conscience or to be intolerable to fundamental fairness." *Id.*
> Significantly, a prisoner's disagreement with medical personnel over the course
> of his treatment does not make out a cause of action. *Wright v. Collins*, 766 F.2d
> 841, 849 (4th Cir. 1985).

*Moore*, 2017 WL 4118458, at *4. A deliberate indifference claim must satisfy a high bar, and

that bar is not met by showing that "an official should have known of a risk; he or she must

have had actual subjective knowledge of both the inmate's serious medical condition and the

excessive risk posed by the official's action or inaction." *Jackson v. Lightsey*, 775 F.3d 170, 178

(4th Cir. 2014). The prison official must both be aware of the facts from which the inference

could be drawn that a substantial risk of harm exists and must draw the inference. *Johnson v.

Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *see also Farmer*, 511 U.S. at 837.

Intentional delay of, or interference with, medical treatment can also amount to

deliberate indifference. *See Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018). The Fourth

Circuit, however, has held that there is "no Eighth Amendment violation unless 'the delay

results in some substantial harm to the patient,' such as a 'marked' exacerbation of the

prisoner's medical condition or 'frequent complaints of severe pain.'" *Id.* at 755 (citing *Webb

v. Hamidullah*, 281 F. App'x 159, 166–67 (4th Cir. 2008)); *see also Shame v. S.C. Dep't of Corr.*, 621

F. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference

if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."). "The

substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or

considerable pain." *Shabazz v. Prison Health Servs.*, No. 3:10cv190, 2011 WL 2489661, at *6

(E.D. Va. Aug. 9, 2011); *see also Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995).

In addition, the Supreme Court has

recognize[d] that subjecting individuals to a risk of future harm—not simply actually inflicting pain—can qualify as cruel and unusual punishment. To establish that such exposure violates the Eighth Amendment, however, the conditions presenting the risk must be sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers.

*Baze v. Rees*, 553 U.S. 35, 49–50 (2008) (considering whether three-drug lethal injection method for capital punishment posed unacceptable risk of significant pain so as to be cruel and unusual punishment). Only an "objectively intolerable risk of harm" can qualify as cruel and unusual. *Id.* at 50.

## C.

Coward alleges that the Dental Defendants denied him treatment for periodontitis (including specialized toothpaste and dental cleanings) and that the dentist focused instead on tooth extractions. But Coward has not established that actions by these defendants met the legal definition of deliberate indifference to known serious medical needs as required to state a § 1983 claim. Therefore, the court will grant the defendants' Motions for Summary Judgment.

The court first notes that Coward's claims for injunctive relief against these defendants must be dismissed as moot. *See Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive . . . relief with respect to his incarceration there."). Coward's transfer to another prison means he is no longer under the care of these defendants, making moot his demands for orders that they provide him with particular dental treatment.

Second, the court cannot consider many of Coward's statements in this lawsuit as part of the summary judgment analysis. In Coward's responses to Dr Wiedemann's summary

judgment evidence, he makes pages and pages of conclusory claims. He contends that the VDOC *should* provide to inmates diagnosed with periodontitis various advertised commercial products and treatments for the symptoms of the disease, such as the toothpaste he requested from the Dental Defendants. Coward is no medical expert, and he offers no expert's affidavit or other competent evidence in support of the medical necessity or effectiveness of these products. This evidence is simply not competent to refute the evidence offered by Dr. Wiedemann with his documented medical expertise and the extensive, personalized medical records he has reviewed and presented here. *See, e.g., Bell v. Scholtz,* No. 09-3007, 2011 WL 1238911, at *2 (C.D. Ill. Mar. 30, 2011) ("conclusory allegations and self-serving affidavits, if not supported by the record will not preclude summary judgment" regarding adequacy of periodontal treatment inmate received).

In Coward's unverified summary judgment responses, he also makes pronouncements, unsupported with dates or documentation, that the court need not accept as fact. He states that he "discussed all issues concerning his periodontitis ever since the first meeting and discussion with Dr. Wiedemann"; that "Pariodontax [sic] was the only thing that [he] knew of that could help his problem"; that "[i]t is unreasonable to think that [Coward] didn't discuss [alternative treatment for Tooth 11] with Dr. [W]iedemann";[7] and that Coward's "gums continue to bleed and are continually painful." Resp. Opp'n 9, 10, 11, 17, ECF No. 61. Coward's conclusory statements in his responses are not made under penalty of perjury and are unsupported by other competent evidence or specific factual matter. Therefore, the court

---

[7]    Similarly, Coward alleges in his Complaint that he "couldn't get a clear explanation from Dr. Wiedemann why the nerve couldn't just be treated and save . . . a perfectly good tooth." Compl. 11, ECF No. 1-1.

cannot consider these statements in his response in the summary judgment analysis. Moreover, the record reflects that Dr. Wiedemann received no complaint from Coward about not having his teeth cleaned while he was at Augusta, and the dentist obtained Coward's written consent to having Tooth 11 extracted; that Coyner advised Coward in writing of ways to manage periodontal symptoms, including gum or tooth sensitivity; and that Coward's verified Complaint did not allege making any report to either of the defendants that his gums were continually painful and bleeding while he was at Augusta. *Id.* Coward's speculative fears in his submissions of periodontitis leading to oral cancer are similarly without evidentiary value in this context. *Baber*, 977 F.2d at 875.

From the information reflected in Coward's documented requests for dental services and other dental records, his periodontitis was a chronic and manageable condition for most of the period he spent at Augusta in 2018 to 2021.[8] In that condition, Coward fell into Class 1 or 2 under the VDOC dental procedure, for low priority or routine dental care to be provided only upon his request and only as staffing and resources allowed. As it happens, when Coward requested to have a dental cleaning more than a year after he arrived at Augusta, dental cleanings were temporarily unavailable. Neither of the Dental Defendants could take over the departed hygienist's role nor could they find and hire a replacement hygienist. VDOC

---

[8] In Coward's response to Dr. Wiedemann's summary judgment motion, he pulls in evidence of dental treatment encounters he had with the dentist during a previous incarceration at Augusta in 2017. Any § 1983 claims based on treatment from 2017 or earlier is barred by the applicable statute of limitations. Virginia's two-year statute of limitations for personal injury actions, Virginia Code Ann. § 8.01-234(A), applies to Virginia prisoner civil rights actions brought pursuant to §1983. *See Shelton v. Angelone*, 148 F.Supp.2d 670, 677 (W.D. Va. 2001) (citing *Owens v. Okure*, 488 U.S. 235, 239-40 (1989); *Wilson v. Garcia*, 471 U.S. 261 (1985)). Moreover, it is well established that a plaintiff may not amend a complaint through argument in a brief opposing summary judgment. *See Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009) (citing other cases). In a similar vein, Coward attempts to raise a negligence claim against the dentist in his summary judgment responses with amending his Complaint or providing any affidavit or declaration from a medical expert to support such a claim. The court will not allow these improperly presented and futile amendments.

- 18 -

regulations prohibited offsite visits for such routine matters. Dental cleanings are, at most, preventative measures. Coward presents no evidence even suggesting that he had a serious medical need for a dental cleaning while he was at Augusta, or that his periodontitis itself presented an "objectively intolerable risk of harm" to occur in the future, as contemplated in as contemplated in *Baze*, 553 U.S. at 49–50, so as to require immediate attention to that condition itself. The record includes no evidence that more regular dental cleanings would have prevented Coward from losing the teeth that Dr. Wiedemann pulled while he was at Augusta—procedures the dentist performed to prevent pain and stop further infection. Thus, Coward has not shown that the delay in getting his teeth cleaned caused him any substantial harm, as required to prevail in his deliberate indifference claim for delayed dental cleanings. *Formica*, 739 F. App'x at 755; *see also Peralta v. Dillard*, 704 F.3d 1124, 1129 (9th Cir. 2013), *on reh'g en banc*, 744 F.3d 1076 (9th Cir. 2014) (holding dentist may not be held liable for damages for services that he could not provide "because of a lack of resources that he could not cure"); *Bell,* 2011 WL 1238911, at \*2 (granting summary judgment where prison had no hygienist for two years, but plaintiff failed to prove that his chronic periodontitis posed immediate risk of substantial harm, and dentist treated plaintiff for acute dental problems with tooth extractions).

The defendants were also unable to provide the specialized toothpaste Coward requested, although Dr. Wiedemann tried to see if it could be made available to VDOC inmates. "[A] prisoner's disagreement with the decisions of medical personnel does not state a cognizable § 1983 claim." *Al-Wahhab v. Virginia*, No. 7:18-cv-00197, 2018 WL 3614212, at \*3 (W.D. Va. July 27, 2018); *Lancaster v. Akers*, No. 7:15CV00402, 2016 WL 590480, at \*2

- 19 -

(W.D. Va. Feb. 11, 2016) ("[T]he jail's dentist did not find it to be a medical necessity for Lancaster to be prescribed special toothpaste to treat his tooth sensitivity. Lancaster's own desire to treat his condition with the recommended toothpaste instead of pain medication is insufficient to prove that he has a serious medical need for the desired product."). Dr. Wiedemann did not prescribe or even recommend Paradontax toothpaste for Coward's condition, and the company producing the toothpaste admits that it is no magic wand to prevent future harm from chronic periodontitis. Thus, Coward has not shown that lack of this product caused him any substantial harm.

Coyner, as a dental assistant, makes triage assessments of an inmate's dental needs and schedules him for appropriate care. She does not clean teeth. The record does not reflect that, in Coyner's encounters with Coward in this limited role, he ever made her aware that his periodontitis itself posed a substantial risk of serious pain, permanent impairment, or life-threatening harm, as required to show a serious medical need worthy of more than the routine care he requested from her. Nor does the record show that Coyner took, or failed to take, any action that *deprived* Coward of a dental cleaning or any medically necessary treatment. Rather, Coyner placed Coward on the list for dental cleaning. She informed him of self-help measures he could take in managing his gum problems. And she informed him of staffing problems and VDOC regulations that prevented sending him to an outside specialist for dental attention. Coward makes fun of Coyner's suggestion to use Sensodyne. Yet, her responses to his requests reflect that she was merely suggesting an available option to ease minor discomfort that his periodontal issues might present. When he complained of nerve pain and asked for solutions, she explained how he could use Sensodyne to lessen that pain. Certainly, he has not shown

that Coyner's actions were "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*, 896 F.2d at 851. The court finds no material disputed fact on which Coward could persuade a jury that he presented any serious medical need to Coyner to which she was deliberately indifferent. Thus, the court will grant Coyner's Motion for Summary Judgment.

The court also concludes that Dr. Wiedemann is entitled to summary judgment. No competent evidence reflects that while Coward was incarcerated at Augusta from April 2018 until June 2021, he ever informed or demonstrated to Dr. Wiedemann that his periodontitis itself presented a substantial risk of harm requiring dental intervention or treatment. The record also demonstrates that the dentist monitored the progress of Coward's periodontitis during his dental visits for other purposes. For over a year during denture-related exams, the dentist warned Coward that Tooth 17 was a problem and offered to extract it to prevent further deterioration or the spread of infection. Coward ultimately agreed with this recommendation and the extraction procedure went well.

Whenever Coward developed and complained of serious tooth pain while at Augusta, Dr. Wiedemann promptly examined him and provided treatment (pain medication and antibiotics) the same day or the following day. In September 2020, when Coward was not sure which tooth was the source of his pain, Dr. Wiedemann provided him with medications to treat his pain and any possible infection. At the follow-up visit, Coward decided to wait, and the dentist agreed. When Coward developed swelling and increased soreness in November 2020, Dr. Wiedemann responded the same day, had X-rays taken, discovered an abscess and lesion, provided pain medication and antibiotics, and scheduled an extraction as the only

effective option. Coward provides no competent evidence that he asked the dentist for any different treatment or that refutes the documentation showing he consented to the extraction of Tooth 11. He also fails to refute Dr. Wiedemann's evidence that extraction, rather than a root canal, was the only viable option for a long-term solution with Tooth 11.[9]

In short, the record reflects that Dr. Wiedemann provided Coward with extensive dental care related to his periodontitis. Treatment of this condition relies mostly on Coward's actions—brushing and flossing his teeth regularly—and does not necessarily require targeted treatment of the gums. Dr. Wiedemann conducted numerous visual exams of Coward's teeth and gums, took X-rays, monitored the progress of problem teeth from exam to exam, prescribed pain relief and antibiotics, and extracted teeth when pain and infection made it impracticable to save them.

Coward would prefer to receive more, or different, specialized treatments related to his periodontitis, referral to a periodontal professional, and regular plus specialized dental cleanings. The Dental Defendants provided him with treatment, however—provided personal dental hygiene instruction, signed him up to receive dental cleanings when they became available, a partial denture, and treatment of any acute dental issues that arose. Coward's disagreement with their treatment choices is not sufficient to support a finding of deliberate

---

[9] As an alternative ground for partial summary judgment, Dr. Wiedemann presents evidence that Coward failed to exhaust administrative remedies as to his claim concerning treatment of Tooth 11. This argument is well taken. Inmates are required by law to exhaust available administrative remedies before suing in federal court. *See* 42 U.S.C. § 1997e(a). Coward does not dispute Dr. Wiedemann's evidence that after the dentist extracted Tooth 11 on January 5, 2021, Coward never completed all available steps of the VDOC grievance procedure, OP 866.1. Coward also offers no evidence showing that these remedies were unavailable to him. Accordingly, Coward's claim against Dr. Wiedemann regarding this extraction is barred under 42 U.S.C. § 1997e(a). *See Ross v. Blake*, 578 U.S. 632 (2016). Therefore, the court will dismiss this aspect of Coward's claims against the dentist both for failure to exhaust and for lack of merit.

indifference. Rather, courts have upheld this same treatment plan as constitutionally sufficient. *See, e.g.*, *Baptiste v. Dunn*, No. 2:08-CV-01420HDMRAM, 2009 WL 2152092, at *5 (E.D. Cal. July 17, 2009) (inmate refused to comply with prescribed care, demanding referral to specialist; court found no deliberate indifference when plaintiff received many dental exams and treatment; dentists took full mouth x-rays as needed, fitted him for a new dental partial, and treated his periodontal disease by recommending consistent oral hygiene and extraction of unsalvageable teeth).

Certainly, Coward has not shown that Dr. Wiedemann's actions were "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*, 896 F.2d at 851. The court also finds no material disputed fact on which Coward could persuade a jury that the dentist was deliberately indifferent to any serious medical need. Accordingly, the court will grant this defendant's Motion for Summary Judgment.

### III.

For the stated reasons, the court will grant the Dental Defendants' Motions for Summary Judgment, ECF Nos. 37 and 64, as to Coward's Claim (3). An appropriate Order will issue herewith.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to the parties

**ENTERED** this 5th day of April, 2022.

Michael F. Urbanski
Chief U.S. District Judge
2022.04.05 13:17:37
-04'00'

_____
Michael F. Urbanski
Chief United States District Judge